UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHNNY STRICKLAND,

        Plaintiff,                                     No. 18-12640

v.                                               Honorable Nancy G. Edmunds

CITY OF DETROIT,
    et al.
        Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS CITY OF DETROIT AND CASEY SHIMECK'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND/OR FOR NEW TRIAL [99]**

This matter is before the Court on Defendants City of Detroit and Casey Schimeck's motion for judgment as a matter of law and/or for new trial. (ECF No. 99.) The Court will decide the matter without a hearing pursuant to Eastern District of Michigan Local Rule 7.1. (ECF No. 100.)

**I.**      **Background**

Plaintiff Johnny Strickland is a police officer with the Detroit Police Department. (Am. Compl. ¶ 1, ECF no. 19; Strickland Dep. 20, Defs.' Mot. Summ. J., Ex. 2, ECF 36-3.) At the time this case went to jury trial, there were two remaining defendants: the City of Detroit and City of Detroit police officer Casey Schimeck.

Plaintiff initially brought four claims against the defendants. On November 5, 2019, the Court granted Defendants' motion for summary judgment on all claims. (ECF No. 41.) On April 22, 2021 the Sixth Circuit affirmed the Court on Plaintiff's hostile work environment claims and reversed and remanded the excessive force and retaliation

1

claims. *Strickland v. City of Detroit*, 995 F.3d 495 (6th Cir. 2021). The remaining claims were retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) (Count 2, against Defendant City of Detroit); and violation of 42 U.S.C. § 1983, excessive force (Count 3, against Defendant Schimeck). (ECF no. 19.)

A 3-day jury trial commenced on December 1, 2022. During trial, on December 2, 2022, Defendants moved for judgment as a matter of law on the retaliation claim, on the issue of pretext. (Transcript, ECF No. 95, PageID.1833-36.) The Court took the motion under advisement and allowed the claim to go to the jury. On December 5, 2022, Defendants moved for judgment as a matter of law on the excessive force claim. (ECF No. 96, PageID.1879-82.) Again, the Court took the motion under advisement and submitted the claim to the jury. On December 5, 2022, the jury returned a verdict in favor of Plaintiff on both the excessive use of force claim and the retaliation claim. The jury awarded $1.00 on the excessive use of force claim and $150,000 on the retaliation claim. (ECF No. 87.) Judgment was entered against Defendants in accordance with the jury's verdict. On December 21, 2022 the Court held a hearing on the motions for directed verdict and denied both.

## II. Standard

Defendants move for judgment as a matter of law under Fed. R. Civ. P. 50(b), or in the alternative, request a new trial under Fed. R. Civ. P. 59(a)(1). Fed. R. Civ. P. 50 provides for judgment as a matter of law:

> (a)(1) . . . If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and

2

> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
> . . .
>
> (b) . . . No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.
> . . .

Fed. R. Civ. P. 50(a), (b). In response to the renewed motion, the Court may allow judgment on the verdict, order a new trial, or "direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b)(1), (2), and (3).

Pursuant to Fed. R. Civ. P. 59(a)(1), the "court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; . . . ."

"The applicable judicial standard to determine the correctness of the denial of a directed verdict and a judgment notwithstanding the verdict is the same since the motion for a judgment notwithstanding the verdict merely renews an earlier motion for a directed verdict." *Minton v. Southern Railway Co.*, 368 F.2d 719, 720 (6th Cir. 1966).

> The standard to be applied in determining the propriety of a grant or denial of a directed verdict is whether the evidence is such, without weighing the credibility of the witnesses or considering the weight of the evidence, that there is substantial evidence from which the jury could find in favor of the party against whom the motion is made. In considering a motion for directed verdict the district court and this court must view the evidence in a light most favorable to the party against whom it is made. Only when it is clear that reasonable men could come to but one conclusion from the evidence should a court grant a motion for directed verdict.

*Coffy v. Multi-County Narcotics Bureau*, 600 F.2d 570, 579 (6th Cir. 1979) (internal citations omitted).

3

> [W]hile the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached. In applying these two broad principles defining the permissible limits of court action in granting a new trial on the weight of the evidence, the district judge must, as is generally stated, exercise his sound judicial discretion.

*Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967) (citation omitted).

### III. Analysis

#### A. Plaintiff's Retaliation Claim: Pretext

Defendants argue that the verdict was against the great weight of the evidence. First they argue that Plaintiff failed to prove pretext under his retaliation claim, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a). (ECF No. 99, PageID.2091-92.) When the Sixth Circuit Court of Appeals considered this Court's decision, it found that Plaintiff had established the elements of his prima facie retaliation claim, and that the "City met its burden to articulate a legitimate, non-retaliatory basis for Plaintiff's discipline." *Strickland*, 995 F.3d at 512. Defendants argue that at trial, Plaintiff failed to establish the next step of his retaliation claim, that the Defendant's reason for disciplining him was pretext. (ECF No. 99, PageID.2092-93.)

In order to show pretext, Plaintiff has to show that the proffered reason "is not the real reason" he was disciplined. *Strickland*, 995 F.3d at 512 (citing *George v. Youngstown State University*, 966 F.3d 446, 462 (6th Cir. 2020)). "[A] plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Id.* (citing *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). "Title VII retaliation claims can be established 'either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an

4

inference of retaliation.'" *Kuklinski v. Mnuchin*, 829 F. App'x 78, 82 (6th Cir. 2020) (citation omitted).

Plaintiff introduced evidence at trial from which a jury could determine that the Defendant's proffered reason for discipline did not actually motivate the action. First, Plaintiff testified that Captain Bliss made a comment on the evening of the gas station parking lot events that "this goes nowhere from tonight." (Tr. Vol. 2, ECF No. 94, PageID.1640-41.) A reasonable jury could conclude that this was a threat.

Additional circumstantial evidence also supports a jury's finding that the proffered reason did not actually motivate the discipline against Plaintiff. The evidence here was not unlike in *Tisdale v Federal Express*, in which the plaintiff was subject to an investigation in close temporal proximity to his making public comments about discriminatory practices, and he was the only employee connected with a particular program who was ever investigated. *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 530 (6th Cir. 2005). The court of appeals concluded that "a reasonable juror could find that [the defendant's] purported reason for [the plaintiff's] termination was not based in fact, did not actually motivate the discharge, and was insufficient to warrant termination anyway." *Id.*

Plaintiff testified that he filed a complaint after the gas station parking lot incident specifying the basis of discrimination as race and retaliation. After filing the complaint Plaintiff was asked to submit to a Garrity interview, in which he answered questions about the incident while under oath. (ECF No. 94, PageID.1653-54.) He testified that at the beginning of the Garrity interview he was told that he was not the focus of the

5

investigation, yet he was asked questions about matters that later became the subject of charges filed against him. (ECF No. 94, PageID.1654.)

Defendants argue that Plaintiff did not put forth evidence to show that Captain Bliss's "statement had any influence on the Internal Affairs investigation, nor did it have any influence on the Disciplinary Unit which suspended Plaintiff for three days. Defendants rely on *Mansfield v. City of Murfreesboro*, 706 F. App'x 231 (6th Cir. 2017), in which the Sixth Circuit affirmed a grant of summary judgment for the defendant. The court noted that there was "ample evidence of Major Hudgens's boorish behavior and unprofessional remarks" yet the plaintiff "provided insufficient evidence to back up his assertion that 'Major Hudgens ha[d] enough power to single-handedly decide who will be promoted,' let alone that Major Hudgens acted on such power, for a reasonable jury to conclude from this evidence that Sergeant Wood's selection for the position was mere pretext for denying the position to Mansfield." *Id.* at 239. As Plaintiff points out, *Mansfield* is distinguishable from this case. The *Mansfield* court noted some weakness in the causation element, including the distant temporal proximity between the plaintiff's formal complaint and the denial of his application for a sergeant position. *Id.* at 237.

Plaintiff testified that he felt that he was being penalized for filing the complaint: "I feel like it's what Captain Bliss basically told me, if I made a complaint or did anything that there would be some type of consequences, and to me I felt like this is what he meant." (ECF No. 94, PageID.1658.) Plaintiff testified that it would have been Captain Bliss who would have been expected to initiate an investigation, if one were to occur, but that Captain Bliss did not initiate an investigation. (ECF No. 95, PageID.1731-32.) The investigation that occurred was initiated as a result of Plaintiff's complaint. (ECF No. 95,

6

PageID.1732.) From this, the jury could have concluded that Captain Bliss's actions were consistent with his comment to Plaintiff on the evening of the gas station event.

Plaintiff testified that he found it unusual that Internal Affairs video-recorded him when he was at LA Fitness. (ECF No. 94, PageID.1658.) Plaintiff also testified that he understood that both he and another officer, Steven Murdock, failed to complete activity logs but that charges were recommended only against Plaintiff. (ECF No. 95, PageID.1734.)

Plaintiff points out that the Sixth Circuit has upheld verdicts in which the plaintiff relied on a totality of the employer's actions to demonstrate pretext. *See Tisdale*, 415 F.3d at 529 ("The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." "'[The plaintiff] may succeed in this [i.e., in persuading the court that she has been the victim of intentional discrimination] either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Internal citations omitted.); *Spengler v. Worthington Cylinders*, 615 F.3d 481, 495 (6th Cir. 2010) ("We conclude that the totality of the evidence in the record, when viewed in the light most favorable to Plaintiff, does not lead reasonable minds to but one conclusion in favor of Defendant. Consequently, granting Defendant's motion for judgment as a matter of law would have been inappropriate."); and *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008) ("[T]he plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision "to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment

7

action was its actual motivation." Citation omitted.). Plaintiff also points out that Defendant City does not identify any proofs offered regarding the retaliation claim that would contradict or challenge Plaintiff's testimony. Given all of this evidence, a reasonable juror could find that Defendant City's reason for disciplining Plaintiff did not actually motivate his discipline and was insufficient to warrant the discipline. A reasonable juror could find Plaintiff's explanation of retaliation credible.

### B. Plaintiff's Excessive Force Claim: Injury

Defendants argue that Plaintiff provided insufficient evidence of injury with respect to his excessive force claim, specifically that Plaintiff "did not prove by a preponderance of the evidence that he suffered a physical injury as a result of tight handcuffs." (ECF No. 99, PageID.2097.) Defendants argue that there was no evidence presented by either testimony or documents that Plaintiff had an objective injury. They rely on *Jackson v. Lubelan*, in which the Sixth Circuit noted that "a subjective assessment of pain does not amount to evidence of 'physical injury.'" *Jackson v. Lubelan*, 657 F. App'x 497, 501 (6th Cir. 2016) (citation omitted). But in *Jackson*, the only injury that the plaintiff "plausibly allege[d] as 'resulting' from the handcuffing [was] the pain and numbness he felt after the first minute." *Id.* 500-501 ("the record and Jackson's testimony suggest that the injuries stem from the nerve damage in his neck, which Jackson admits was not caused by the tightness of his handcuffs"). The court went on to note that

> That is not to say that a plaintiff's testimony can never establish an injury. It's to say that a subjective feeling of pain or numbness standing alone does not constitute a physical injury. A ruling to the contrary would allow every suspect who is handcuffed to create a material-fact dispute over an excessive-force claim simply by stating that they complained and that the handcuffs hurt.

*Id.* at 510.

Dr. Gayani's February 3, 2017 report was admitted into evidence at the trial. (ECF No. 94, PageID.1651.) In the report, the doctor noted "Encounter diagnosis, wrist injury, unspecified laterality, initial encounter. Impression, wrist injury from pressure. Now improved, denied functional impairment. States he is ready to go back to work." (ECF No. 94, PageID.1651.) Plaintiff's testimony included that he had tingling sensations in his fingers, and pain. (ECF No. 94, PageID.1651-52.) He also testified to purple-blueish discoloration of the wrists following the incident. (ECF No. 94, PageID.1681.) Plaintiff's evidence included his own testimony of the results of the handcuffing, as well as a medical record consistent with his testimony that he suffered an injury from the handcuffing. This jury's verdict is one which reasonably could have been reached based on the evidence before it.

**C. Whether Defendants' Trial Strategy Was Altered and Necessitates a New Trial**

Finally, Defendants argue that they had been prepared to present seven witnesses, but because "Plaintiff made certain admissions; one of which was that the discipline was warranted" and that he had not proven pretext, that Defendants moved for directed verdict. They then argue that "[b]ecause the Court opined that Plaintiff had not established pretext, [TR Vol 2, p. 120, lines 2-7], Defendants' trial strategy was altered." (ECF No. 99, PageID.2099.] And therefore, it was no longer necessary for them to present four of their witnesses on the issue of pretext.

As an initial matter, the transcript citation given by Defendants (Tr. Vol. 2, p. 120, lines 2-7) does not contain this material; the motion for directed verdict was addressed in transcript volume 3. The Court's exact language was "I'm going to take the motion under

9

advisement. I think if we're looking at the established elements for showing pretext that the Plaintiff doesn't show it, but there is extraneous evidence. I'm going to let it go to the jury and see what they do, but I'll keep the motion under advisement." (Tr. Vol. 3, p. 120, lines 207.) ECF No. 95, PageID.1826.) The Court was clear that the issue remained.[1] *See also* Fed. R. Civ. P. 50(b) ("If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.") To the extent Defendants may have altered their strategy, they did so without the Court having ruled on the issues raised by their motion for judgment as a matter of law. This does not necessitate a new trial.

For the reasons set forth herein, the Court denies Defendants City of Detroit and Casey Schimeck's motion for judgment as a matter of law and/or for new trial. The jury verdict in favor of Plaintiff on either claim was not against the clear weight of the evidence.

### IV.     Conclusion

For the reasons stated above it is hereby ordered that Defendants' motion for judgment as a matter of law and/or for new trial is DENIED.

SO ORDERED.

                                                s/Nancy G. Edmunds
                                                Nancy G. Edmunds
                                                United States District Judge

Dated: November 28, 2023

---

[1] It is worth noting that prior to the motion for judgment as a matter of law, when the Court and parties with their attorneys went through jury instructions, "pretext" was added to the instruction for the jury, and the parties and Court had extensive discussions about it in the context of instructing the jury. (Tr. Vol. 2, ECF No. 94, PageID.1709-15.)

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 28, 2023, by electronic and/or ordinary mail.

                          <u>s/Lisa Bartlett</u>
                          Case Manager